FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

97 FEB -6 AM 11: 11

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| PEARLIE STAMPER, | ) |
| Plaintiff, | ) |
| v. | ) CV95-H-3244-NE |
| CITY OF HUNTSVILLE, et al., | ) |
| Defendants. | ) |

ENTERED

FEB - 6 1997

MEMORANDUM OF DECISION

Presently before the Court is the December 12, 1996 motion for summary judgment filed by defendants. Pursuant to the Court's December 12 and 26, 1996 Orders, the motion was deemed submitted, without oral argument, on January 24, 1997.

I. Procedural History

Plaintiff Pearlie Stamper commenced this action on December 18, 1995. Her complaint alleged that the City of Huntsville had discriminated against her in employment because of her race. Plaintiff made claims against the City under Title VII of the Civil Rights Act of 1964, and also asserted a claim against the City based on 42 U.S.C. §§ 1981 and 1983. In addition, the complaint made claims against Jim Putnam and Ken Arnold, members of the Huntsville City Council, and Steve Hettinger, Mayor of Huntsville, under § 1983. Plaintiff sued these three defendants in both their individual and official capacities.



## II. Standards for Evaluating a Summary Judgment Motion

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. <u>Fitzpatrick</u>, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. <u>Lewis v. Casey</u>, \_\_\_\_ U.S. \_\_\_\_, 116 S.Ct. 2175 (1996).

### III. Relevant Undisputed Facts

Plaintiff began her employment with the City of Huntsville on May 29, 1990 as a secretary I working for the Huntsville City

4

Council. (Stamper Aff.). On October 14, 1991, plaintiff's position was upgraded to that of secretary II. (Id.).

Although there had originally been two administrative aides working for the City Council, the City adopted an ordinance on November 12, 1992 to downgrade one of the administrative aide positions to that of secretary II. (Id.). After that ordinance, the City Council had four employees: a secretary I, two secretary II's and an administrative aide, who supervised the secretaries. (Id.). A white female, Helen Fulton, was hired for the newly-created secretary II position in January 1993, and began receiving a higher salary than plaintiff. (Id.; Plaintiff's Ex. 5).

On August 4, 1994, plaintiff's position was audited by the City. (Perry Aff.). After comparing plaintiff's work responsibilities with the job description of a secretary II, the audit concluded that plaintiff's job was properly classified, and no change in status was recommended. (Id.). An October 5, 1994 memo from Charles Perry, the City's Director of Human Resources, also expressed concerns over the creation of two supervisory positions in the four-person City Council office. (Id., Ex. B-2).[1]

After the audit results were reported to the City Council,

---

[1] Although plaintiff concedes that the audit was performed, she takes issue with the accuracy of its conclusions. Plaintiff asserts that the audit was constantly interrupted, preventing a thorough evaluation of her responsibilities.

5

Councilman Richard Showers assured plaintiff that the second administrative aide position would be created and that plaintiff would be "in line" to receive a promotion to the new position. (Stamper Aff.).[2]

On November 22, 1994, an ordinance was proposed to create a second administrative aide position in the City Council office. (Hagood Aff., Ex. A-3). That ordinance, number 94-860, came up for a vote on December 8, 1994. (Id., Ex. A-4). Of the five City Council members, three voted in favor of the ordinance, and two (Putnam and Arnold) voted against it. (Id.). The ordinance passed, but Councilman Putnam made a notation that he planned to ask the mayor, Steve Hettinger, to veto it. (Id.).

Mayor Hettinger vetoed the ordinance on December 16, 1994. (Id., Ex. A-6). On December 20, 1994, the City Council voted in an attempt to override that veto. (Id., Ex. A-9). However, because Councilmen Arnold and Putnam voted to sustain the veto, the necessary 2/3 majority could not be reached, and the mayor's veto of ordinance 94-860 was sustained. (Id.).

Arnold, Putnam, and Hettinger gave three reasons for opposing the ordinance. First, it was noted that the City was in a period of budget cutbacks, and it would set a poor example for

---

[2]Defendants hotly contest that plaintiff would have been automatically promoted to the new position; they assert that plaintiff would have been required to compete with other applicants for the position. This factual dispute, however, is immaterial to the Court's resolution of the instant motion.

6

the Council to increase its staff budget while cutting the budgets of other branches of the City government. (Arnold Aff.; Hettinger Aff.). Second, the audit of plaintiff's position had revealed that the workload of plaintiff's position was insufficient to justify a reclassification to administrative aide. (Id.). Finally, concern was expressed over the potential problems of having two equal supervisory individuals in the same office. (Id.).

In November 1995 and February 1996, the Council voted to upgrade six secretary II positions to administrative aides; all of these upgraded positions were held by white employees, and the City's Human Resources Department had determined that no upgrade was necessary. (Plaintiff's Exs. 7-8).

## IV. Analysis

The defendants' motion for summary judgment raises three arguments for the Court to consider. The individual defendants assert that they are entitled to either absolute legislative immunity or qualified immunity. In addition, the defendants assert that plaintiff has insufficient evidence of discriminatory intent to present her claims to a jury. The Court addresses these arguments in turn.

Plaintiff's claims against Putnam and Arnold (in their individual capacities) are based upon the December 20, 1994 vote

7

of the City council to sustain the mayor's veto of ordinance 94-860. Plaintiff's claim against Hettinger arises from Hettinger's December 16, 1994 veto of ordinance 94-860. Hettinger, Putnam, and Arnold all assert that they are entitled to absolute legislative immunity, because the conduct complained of was legislative in nature.

It is now well-settled that local legislators are entitled to absolute legislative immunity in this Circuit. See, e.g., Ellis v. Coffee County Bd. of Registrars, 981 F.2d 1185, 1190 (11th Cir. 1993); Hernandez v. City of Lafayette, 643 F.2d 1188, 1193 (5th Cir. Unit A 1981). However, not every act by a local legislator is shielded by immunity -- the Court must inquire whether the conduct complained of was a "legislative function" or "legislative activity." Ellis, 981 F.2d at 1190. Only if protection of the activity is necessary to "preserve the integrity of the legislative process" will absolute immunity apply. Yeldell v. Cooper Green Hospital, 956 F.2d 1056, 1062 (11th Cir. 1992).

The Eleventh Circuit has clearly stated that voting on local ordinances is a legislative activity protected by absolute immunity. See Yeldell, 956 F.2d at 1062. In addition, although a city's mayor is not a legislator, a mayor is entitled to legislative immunity when he participates in the legislative process. See Hernandez v. City of Lafayette, 643 F.2d 1188, 1193-94 (5th Cir. Unit A 1981). See also Healy v. Town of

Pembroke Park, 831 F.2d 989 (11th Cir. 1987) (holding that a mayor was entitled to legislative immunity). In fact, in a binding former Fifth Circuit case, the Court held that "when a mayor of a municipality vetoes an ordinance passed by the city's legislative body, he performs a legislative function and is entitled to absolute immunity from a civil suit." Hernandez, 643 F.2d at 1194.

Here, as noted above, plaintiff's claims arise from the decision of Hettinger to veto ordinance 94-860, and the votes of Putnam and Arnold to sustain that veto. Plaintiff candidly admits that, facially, these three defendants are entitled to legislative immunity, but attempts to characterize the defendants' activities as "administrative," rather than legislative. Plaintiff relies on the Eleventh Circuit's decision in Yeldell in this regard.

In Yeldell, several employees of Cooper Green Hospital sued each member of the Jefferson County Commission for alleged racial discrimination in employment at the hospital. Id. at 1059. Commissioner Reuben Davis was not only a member of the County Commission, but also the individual in charge of overseeing the administration of the hospital, including personnel matters. Id. Each of the plaintiffs had complained about Davis' alleged racial discrimination to the other members of the Commission, but the Commission did not act on these complaints. Id.

In assessing the Commissioners' defense of legislative

9

immunity, the Eleventh Circuit noted that Commissioner Davis was not entitled to immunity:

> With respect to Commissioner Davis, all of the accusations made against him stem from the personnel decisions he made at Cooper Green Hospital -- his decisions to hire, fire, and demote certain individuals. These decisions are clearly not "an integral part of the deliberative and communicative processes" by which legislators pass laws. Instead, they are administrative acts. The Third Circuit explained the difference: "Legislative acts are those which involve policy-making decisions of a general scope or, to put it another way, legislation involves line-drawing. Where the decision affects a small number or a single individual, the legislative power is not implicated, and the act takes on the nature of administration." Because the decisions of Commissioner Davis involved no line-drawing and affected only a few individuals at Cooper Green Hospital, the policy-making power that is the cornerstone of legislative activity was not implicated.

Yeldell, 956 F.2d at 1062-63 (citations omitted). The court then went on to hold that the remaining Commissioners were entitled to immunity, because the act they were accused of -- failure to introduce and vote on a resolution to take control of the hospital away from Davis -- was "purely legislative." Id. at 1063.

Tracking the quoted language from Yeldell, plaintiff argues that the defendants here are not entitled to immunity, because their decision only affected one person -- her -- or, at best, a few persons who would have been considered for the new administrative aide position. Because the decision of the City

10

Council and Mayor affected only a single job position and did not announce a broad policy, plaintiff argues that the veto of ordinance 94-860 and the subsequent vote sustaining that veto was not legislative activity. The court rejects this argument.

To begin with, Yeldell's holding regarding Commissioner Davis was factually very distinct from the present case. Davis' activities at Cooper Green Hospital did not involve introducing, debating, and voting on ordinances, but rather individualized personnel decisions made by Davis acting alone as an administrator. Here, however, action on pending legislation is the very conduct complained of.

But plaintiff reads Yeldell as announcing a broader rule -- that when a legislator's decision affects only a small number of persons, the activity -- even if steeped in traditionally legislative trappings -- is not "legislative activity" protected by absolute immunity. However, Yeldell does not stand for any such broad proposition; numerous cases have extended legislative immunity in cases in which only a few persons were affected.

For example, in Hernandez v. City of Lafayette, 643 F.2d 1188 (5th Cir. Unit A 1981), a city mayor vetoed two ordinances that would have rezoned a single parcel of property belonging to the plaintiff. Id. at 1191. Despite the fact that the two vetoes affected only the plaintiff, the former Fifth Circuit held that the mayor was entitled to legislative immunity, citing the fact that a mayor's veto is integrally related to the process of

11

legislation. Id. at 1193-94.

In addition, in Ellis v. Coffee County Bd. of Registrars, 981 F.2d 1185 (11th Cir. 1993), a county legislative body removed the names of specific individuals from the county's voting list because those individuals did not reside within the county. Id. at 1188. This action, although directed at specifically-named individuals, was held to be part of the legislative process by the Eleventh Circuit, and the court concluded that the individual defendants were entitled to legislative immunity. Id. at 1190-92. See also Healy v. Town of Pembroke Park, 831 F.2d 989, 993 (11th Cir. 1987) (decision of mayor and city commissioners to discharge four police officers and contract out police services to county sheriff's department was legislative in nature).

Viewed in the light of these decisions, Yeldell cannot be read to support plaintiff's proposition that legislative activities -- such as voting on ordinances -- can be transformed into administrative actions based on the number of persons affected. Yeldell's holding is clearly restricted to its facts -- where a single county commissioner, acting autonomously, made personnel decisions at a hospital. Indeed, Yeldell's holding regarding the other county commissioners is inconsistent with plaintiff's position. The Eleventh Circuit held that the other commissioners' failure to respond to the plaintiffs' complaints by introducing legislation was an omission protected by immunity, notwithstanding that the decision in question would have affected

only the small number of persons working at the Hospital; the reshuffling of commissioners' administrative responsibilities would not have announced any broadly-applicable policy.

So, the Court concludes that binding Eleventh Circuit precedent requires it to look at the nature of the acts complained of, not the number of persons affected. Here, plaintiff's claims are based on the mayor's veto of an ordinance and two council members' legislative vote to sustain that ordinance. These activities have been held to be purely legislative by the Eleventh Circuit and former Fifth Circuit, and so Putnam, Arnold, and Hettinger are entitled to absolute immunity in their individual capacities.

Furthermore, the Court expressly finds that plaintiff's filing and continuation of this action against Putnam, Arnold, and Hettinger was objectively frivolous in the light of well-established law. Binding precedent dating back to 1981 clearly holds that persons involved in vetoing or voting on municipal ordinances are entitled to absolute immunity. Any attorney should have known that Putnam, Arnold, and Hettinger were entitled to absolute immunity, and plaintiff's decision to file suit against them individually flies in the face of this clearly settled doctrine.

As noted above, the individual defendants have raised the defense of qualified immunity. However, in light of the Court's conclusion regarding absolute immunity, it is unnecessary to

13

reach the issue of qualified immunity.

Finally, the Court addresses the claims against the City. Although the individual defendants are entitled to absolute immunity, that immunity does not apply to a suit against them in their official capacities or a suit against the City itself. See Kentucky v. Graham, 473 U.S. 159, 166-67 (1985); Hernandez v. City of Lafayette, 643 F.2d 1188, 1195-96 (5th Cir. Unit A 1981). The City does not rely on legislative immunity, but rather bases its motion for summary judgment on its assertion that plaintiff has insufficient evidence of discriminatory intent.

In support of its motion, the City relies on two factual assertions contained in the affidavits of record. First, the City asserts that plaintiff would not have automatically been promoted to the new administrative aide position. Rather, the City argues, plaintiff would have been required to compete for the position with other existing City employees and, possibly, outside applicants. Plaintiff, however, has introduced evidence that the voting on ordinance 94-860 was centered around plaintiff personally, and that all involved knew that she was the likely candidate for the new position. Evidence in the record indicates that plaintiff spoke to several members of the City Council before the vote on ordinance 94-860, asking for their support in passing it. In addition, the audit performed on plaintiff's position was cited as one of the reasons for Putnam and Arnold to vote against the ordinance. Thus, the evidence of record

14

suggests that the Council had plaintiff's position in mind when it voted to create a second administrative aide position. The City's assertion that plaintiff would not have received the promotion <u>automatically</u> does not foreclose the possibility that plaintiff might be able to prove that she would have been promoted if the new position had been created. It certainly is safe to assume that she would have applied.

The City next argues that Arnold, Putnam, and Hettinger had legitimate, non-discriminatory reasons for not creating the new administrative aide position. They point to the audit of plaintiff's position and the financial position of the City as their true motivation. However, plaintiff has introduced some evidence, however tenuous, that calls those proffered reasons into question. There is undisputed evidence in the record that the City has promoted six white secretary II's to the position of administrative aide, over the contrary audit recommendation of the City's Human Resources Department. These promotions of facially similarly situated white employees tend to show that the City's reasons for rejecting ordinance 94-860 are pretextual, and that is all that is required to survive a motion for summary judgment. The City has not introduced any evidence that would allow the Court to determine whether these six individuals were truly similarly situated. For the foregoing reasons, the Court concludes that plaintiff's claim of discrimination arising out of the City's failure to create a new administrative aide position

15

in December of 1994 survives the City's present motion.

In addition, plaintiff also claims that the City discriminated against her by paying Helen Fulton, a similarly situated white employee, more. The only evidence in the record about Fulton is that she works in the same office and holds the same job title as plaintiff. This facial showing that Fulton is similarly situated might be deceiving -- there may be some reason why the City pays Fulton more -- but the City has introduced no evidence regarding Fulton. In the absence of some evidence explaining why Fulton earns more than plaintiff, the Court must conclude that plaintiff's claim of unequal pay survives the City's present motion.

To conclude, the claims against Hettinger, Arnold, and Putnam in their individual capacities fail as a matter of law because of those defendants' absolute legislative immunity. The claim against the three individual defendants in their official capacities survives, but is merely duplicative of the claim against the City. See Kentucky v. Graham, 473 U.S. 159, 165 (1985). So, for convenience and clarity, the Court will dismiss the claims against the individual defendants in their official capacities. That will leave two claims in the case against the City: (1) a claim of discrimination arising out of the unequal pay between plaintiff and Helen Fulton, and (2) a claim of discrimination arising out of the City's failure to create an additional administrative aide position. Both of these claims

16

are pursued under Title VII and §§ 1981/1983.

Separate Orders will be entered in accordance with this Memorandum. With regard to the summary judgment in favor of Hettinger, Arnold, and Putnam in their individual capacities, the Court expressly determines that there is no just reason for delay and will direct that a final judgment be entered immediately. See Fed. R. Civ. P. 54(b).

DONE this 6th day of February, 1997.

                                                /s/ James H. Hancock
                                      SENIOR UNITED STATES DISTRICT JUDGE