```
        IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ALABAMA
                  NORTHEASTERN DIVISION
```

FILED 98 MAR 19 AM 9:40  U.S. DISTRICT COURT N.D. OF ALABAMA

ENTERED
MAR 19 1998

PEARLIE STAMPER,              )
                              )
        Plaintiff,            )
                              )
v.                            )    CV95-H-3244-NE
                              )
CITY OF HUNTSVILLE,           )
                              )
        Defendant.            )

## MEMORANDUM OF DECISION

Presently before the court is the December 12, 1996 motion for summary judgment filed by the defendants. On October 28, 1997, the court granted the October 8, 1997 motion of defendants to reconsider the remaining two issues in this case which were raised by such motion but not resolved by the February 6, 1997 final judgment, entered pursuant to Rule 54(b), granting summary judgment in favor of defendants as to all other issues presented in this case. Remaining in this action are the claims of discrimination pursued under Title VII and Sections 1981/1983 against the City of Huntsville (1) arising out of the unequal pay between plaintiff and Helen Fulton; and (2) arising out of the City's failure to create an additional administrative aide position. The February 6, 1997 Memorandum of Decision and Order denied summary judgment in favor of the City as to these claims largely because the City failed to submit any evidence in support

of the requested summary judgment.  Pursuant to the court's December 23, 1997 order, the motion was deemed submitted on February 13, 1998.  Defendant submitted a brief and evidence[1] in support of its motion for summary judgment on October 8, 1997 in addition to previously submitted briefs and evidentiary submissions.  Plaintiff submitted a brief on December 11, 1997 and a supplemental brief and evidence[2] in opposition to summary judgment on February 6, 1998, in addition to previously submitted briefs and evidentiary submissions.

## I. Procedural History and Relevant Undisputed Facts

The court adopts the procedural history and relevant undisputed facts contained in the February 6, 1997 memorandum of decision, except as follows.  Helen Fulton was promoted to Secretary II, grade 10 and transferred to the City Council office on February 1, 1993.  See Hatfield Aff. ¶11.  In late 1995 and early 1996, the executive secretaries for the Directors of Public Services, Finance and Internal Services, and the City Attorney were all reclassified as administrative aide, which was

---

[1] The defendant's evidentiary submission included the affidavits of Peter Joffrion and Terry Hatfield.

[2] The plaintiff's evidentiary submission included excerpts from the deposition of Richard Showers and a memorandum to Councilman Glenn Watson from Councilman Richard Showers.

established at salary grade 12. <u>See</u> Joffrion Aff. ¶3; Hatfield Aff. ¶5. All three of these individuals were white females who had filed personnel grievances. <u>See</u> Hatfield Aff. ¶5. During this period of time, the executive secretaries for the City Clerk-Treasurer, Chief of Police, and Director of Human Resources were denied requests to be reclassified as administrative aides, and they remain as salary grade 10 secretaries. <u>See</u> Joffrion Aff. ¶3; Hatfield Aff. ¶5. All three of these individuals were white females and one female had filed a personnel grievance. <u>See</u> Hatfield Aff. ¶5. Plaintiff did not file a personnel grievance. <u>See</u> Hatfield Aff. ¶7.

## II. Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions

3

on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249.

  The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real

4

Property, 941 F.2d 1428 (11th Cir. 1991) (en banc)).

If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115. If the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. If the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial. The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple

5

statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. Fitzpatrick, 2 F.3d at 1115-16. The affirmative showing may be accomplished by reference to any combination of the following: pleadings; deposition testimony of a party or its witness; affidavits; responses to interrogatories or failure to respond to interrogatories; requests for admission and responses thereto; and other exchanges between the parties that are in the record. See Clark v. Coats & Clark, Inc., 929 F.2d 604 (11th Cir. 1991); see also Celotex, 477 U.S. at 332 (Brennan, J., dissenting). If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.

The Eleventh Circuit has stated that district courts should use caution when taking employment discrimination cases away from the trier of fact by means of summary judgment. Isenbergh v.

6

Knight-Ridder Newspaper Sales, Inc., 84 F.3d 1380, 1384 (11th Cir. 1996). However, the Eleventh Circuit also recognizes that "[s]ummary judgments . . . are not rare in employment discrimination cases." Earley v. Champion International Corp., 907 F.2d 1077, 1080. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which is designated 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). Given the ease of complying with the notice pleading requirements in asserting a discrimination claim, the Eleventh Circuit encourages district courts that "plaintiffs seeking to avoid summary judgment should be strictly held to the requirements of Rule 56(e); the plaintiff must present specific non-conclusory facts that would support a jury verdict against the particular defendant on discriminatory intent." Ratliff v. DeKalb County, 62 F.3d 338, 341 (11th Cir. 1995).

Where, as here, a plaintiff's discrimination claim is based on circumstantial evidence, the court employs the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, the plaintiff has the burden of

7

establishing a *prima facie* case of discrimination.³  Second, after plaintiff has presented a *prima facie* case, the burden of production shifts to the defendant, requiring an articulation of some "legitimate, nondiscriminatory reason" for the alleged discriminatory employment action.  Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).  "[I]t is possible for the defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted."  Brown v. American Honda Motor Co., Inc., 939 F.2d 946, 950 (11th Cir. 1991), cert. denied, 502 U.S. 1058 (1992) (quoting Grigsby v. Reynolds Metals Co., 821 F.2d 590, 596 (11th Cir. 1987)).

Once the defendant presents legitimate, nondiscriminatory reasons for its action, then the plaintiff must prove by a preponderance of the evidence that the reasons offered by the defendant are a mere pretext for discrimination, and to persuade

---

³ In order to present a *prima facie* case of discrimination, plaintiff must show:  (1) that he or she belongs to a protected class; (2) that he or she either applied and was qualified for a position for which the employer was seeking applicants or was satisfactorily performing the duties of the job; (3) that he or she was rejected or terminated; and (4) that, after the rejection, the position remained open and the employer continued to seek applicants for persons of plaintiff's qualifications. McDonnell Douglas, 411 U.S. at 802.  Based on O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996), plaintiff need not show that the position at issue was filled by a person outside the protected class.

8

the fact-finder that the defendant intentionally discriminated against the plaintiff. McDonnell Douglas, 411 U.S. at 804. In other words, "[a]fter a Title VII plaintiff makes out a prima facie case, and the defendant produces a legitimate nondiscriminatory explanation for its actions, the McDonnell-Burdine presumption drops from the case. At that point, the inquiry is whether the defendant intentionally discriminated against the plaintiff." Harris v. Shelby County Board of Education, 99 F.3d 1078, 1083 (11th Cir. 1996).

"[B]ecause the plaintiff bears the burden of establishing pretext [for discrimination], he must present 'significantly probative' evidence on the issue to avoid summary judgment." Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436, 444 (11th Cir. 1996) (quoting Young v. General Foods Corp., 840 F.2d 825, 829 (11th Cir. 1988) (other citations omitted) (alterations in original). "At the summary judgment stage, once an employer articulates a legitimate, nondiscriminatory reason for the discharge, the burden shifts back to plaintiff to raise a genuine factual question as to whether the stated reason is mere pretext." Cortin v. Southland Int'l Trucks, 25 F.3d 1545, 1550 (11th Cir. 1994); Hairston v. Gainesville Sun Publ. Co., 9 F.3d 913, 920 (11th Cir. 1993).

9

Plaintiff may prove that the defendant intentionally discriminated against him either "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy or credence." Carter v. City of Miami, 870 F.2d 578, 584 (11th Cir. 1989). "If the defendant's proffer of credible, nondiscriminatory reasons for its actions is sufficiently probative, then the plaintiff must come forward with specific evidence demonstrating that the reasons given by defendant were a pretext for discrimination." Brown, 939 F.2d at 950. "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." Isenbergh, 97 F.3d at 444 (quoting Young, 840 F.2d at 830).

10

III. Analysis

A. Failure to Create an Additional Administrative Aide Position[4]

The court notes that this case is very political in nature and that the dispute and allegations involved appear to stem from the political bickering among the City Council members. Both of the legislative actions that are the basis of this lawsuit, the passage of the ordinance by the City Council and the veto of the ordinance by the Mayor, demonstrate the political nature of the lawsuit. In the court's February 6, 1997 memorandum of decision, the court found that there was undisputed evidence that the City had promoted six white secretary II's to the position of

---

[4]Plaintiff argues that when she was hired by the City Council, she was promised that she would be promoted to the position of administrative aide in the near future. Plaintiff notes that the council president at the time she was hired, Earnest Kauffman, made this promise to her. It is undisputed that the City Council has materially changed since the plaintiff was hired. There is simply no evidence that the Council, as currently constituted, made this alleged promise to plaintiff. The Council cannot be held to promises or predictions that it did not even make to plaintiff. Further, even assuming these promises were made to plaintiff, plaintiff has not produced evidence sufficient to permit a reasonable factfinder to disbelieve the City's reasons for denying plaintiff the administrative aide position. As discussed below, the opinion of Councilman Showers that the other Council members are racist does not constitute "evidence" that plaintiff has been discriminated against because of her race.

11

administrative aide, over the contrary audit recommendation of the City's Human Resource Department and the court stated that those promotions of facially similarly situated white employees tended to show that the City's reasons for rejecting ordinance 94-680 were pretextual. With its evidentiary submissions now before the court, the defendant argues that plaintiff was not similarly situated to the white females who were promoted and that in fact, only three white females were promoted while three white females were denied the promotion.[5] In the affidavit of Terry Hatfield, the Director of Human Resources for the City of Huntsville, Hatfield states that the executive secretaries for the City Attorney, Director of Finance and Internal Services, and the Director of Public Services were all reclassified as

---

[5]Defendant also argues that the proposed ordinance which is the subject of this lawsuit was a proposal to create a new position, specifically to add a second grade 14 administrative aide to the City Council's office, and that the other reclassifications that were given to the three white secretaries did not result in the creation of a new position. Plaintiff argues that the purpose of the ordinance was to reclassify plaintiff to administrative aide and that the ordinance was essentially a reclassification and not a creation of a new position. Plaintiff also argues that because the Department of Human Resources created a new job description for the three secretaries who were promoted, the result of the reclassification was no different than the result of the proposed ordinance. The court does not base its finding that plaintiff is not similarly situated to the white females awarded the reclassification on this contested information.

administrative aides which effected their move from a grade 10 to a grade 12.[6] See Hatfield Aff. ¶5(a), (b), (c). Hatfield also explained that the executive secretaries for the City Clerk-Treasurer, the Chief of Police, and the Director of Human Resources were all denied reclassification and all continue to serve as Secretary IIs, grade 10. See id. ¶5(d), (e), (f). All six of these women are white females. See id. ¶5. Four of the women filed a personnel grievance and three were awarded the reclassification, while one was not, and the other two women's proposed reclassifications were brought before the Council as a recommendation to maintain consistency among the secretaries to department heads. See id. The three women who were awarded reclassification filed personnel grievances after their initial request for reclassification was denied. See id. The plaintiff did not file a personnel grievance. See id. at ¶7. The plaintiff does not argue that these facts are incorrect. Rather,

---

[6]Defendant also argues that plaintiff is not similarly situated to the females who were reclassified because those females were requesting reclassification to a grade 12 and not a grade 14 position. According to Councilman Showers, this is untrue as the grade 12 position did not exist at the time and the Council created the grade 12 level instead of awarding the females a grade 14 position. See Showers Depo. 58. The court does not base its finding that plaintiff is not similarly situated to the white females awarded the reclassification on this contested information.

the plaintiff argues that the three secretaries who were reclassified did not fully utilize the grievance process and that this demonstrates that plaintiff cannot be considered incomparable to them if she also did not utilize the grievance process. The plaintiff points to one secretary, Sonia Berry, who filed a grievance and was awarded a reclassification to grade 12 without having a hearing that is required by the grievance procedure. Even though Berry did not have a grievance hearing, the plaintiff is still not similarly situated to her because plaintiff never filed a grievance. Once Berry filed a grievance, notifying the Council that she was contesting their decision, the Council could have had several reasons for not requiring a hearing, perhaps to avoid the use of resources to conduct a grievance hearing. However, plaintiff cannot claim to be similarly situated to a secretary who actually filed a personnel grievance. This fact alone separates plaintiff from the three secretaries who were awarded the reclassification. As plaintiff has not proven she is similarly situated to these three secretaries, she has not provided evidence "sufficient to permit a reasonable factfinder to disbelieve [the City's] proffered reasons for the challenged action." <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1534 (11th Cir. 1997). In fact the only

14

"evidence" that plaintiff puts forth is the opinion of Councilman Showers which he states in his deposition. Showers states that the only reason that plaintiff was not upgraded to the position of administrative aide is because plaintiff is black. See Showers Depo. at 20. Showers' opinion of the racial bias of the other council members is not "evidence" but merely a bare allegation and he does not state, and plaintiff does not enunciate, on what grounds he predicates this opinion. The court views this bare allegation as evidence of the political bickering involved in this case. This statement by one member of the Council is simply not enough to call into question the City's proffered reason that because plaintiff was not similarly situated to the secretaries who did file grievances, she was not awarded the upgrade.

### B. Unequal Pay Between Plaintiff and Helen Fulton

Plaintiff alleges that the unequal pay between herself and co-employee, Helen Fulton, constituted discrimination. Both plaintiff and Fulton worked as Secretary IIs, grade 10, in the City Council office. It is undisputed that plaintiff has been employed with the City since May 29, 1990, while Helen Fulton had

15

been employed since February 13, 1989.[7] See Hatfield Aff. ¶11-12. The defendant argues that any difference in pay between Fulton and plaintiff is the result of Fulton's seniority over plaintiff. Plaintiff argues that the context of Fulton's promotion must be examined to evaluate the discriminatory nature of the pay discrepancy. Plaintiff argues that Fulton received a promotion and a step increase to which she was not entitled and that this, and not seniority, explains their pay differential. However, even assuming Fulton received a step increase to which she was not entitled, Fulton's pay would still be different from plaintiff's pay because of seniority. Plaintiff points to no evidence that disputes that Fulton is senior to plaintiff and as such has not provided evidence to permit a reasonable factfinder to disbelieve the City's proffered reason for paying Fulton more than plaintiff. Furthermore, the court notes that plaintiff was promoted to the Secretary II position on October 14, 1991 while Fulton was not promoted to this position until February 1, 1993. Even though plaintiff was junior to Fulton, plaintiff was promoted to the Secretary II position well before Fulton.

The court is satisfied that there is no genuine issue of

---

[7]Helen Fulton was terminated on May 22, 1996.

16

material fact and that plaintiff has failed to set forth evidence to withstand the motion for summary judgment filed by the defendant. That motion to plaintiff's two remaining claims is due to be granted. A separate final order will be entered.

DONE this 19th day of March, 1998.

/s/ James H. Hancock
SENIOR UNITED STATES DISTRICT JUDGE

17